on behalf of the United States. These were two cases from Judge Gutierrez that were decided a couple weeks apart in district court. The government won one, the government lost one, and now we're here. The cases are together before this court. How did he manage to lose this one? I, frankly, I don't know either. Well, I mean, I do. It's because Judge Gutierrez latched on to the reading of Vidal advocated by Mr. Gunn. And, you know, we disagreed with it. And what I guess separates this case from the one we just discussed, in Judge Gutierrez's mind, not in mine, in mine I think analytically the two cases go hand in hand. But Judge Gutierrez noticed that in the judgment and probation order in the prior case, an order reduced ago, there was that notation narcotics. And he thought that's what tilted the scale. That's how he distinguished the two cases. Analytically, I don't think there's a distinction. But he distinguished them factually. Yes. Here you've got tar heroin. Correct. That's controlled under Federal law. Absolutely. But I think his concern was that he ruled against the government in both cases on the categorical approach and then ruled for the government in an order reduced ago under the modified approach because he thought that the word narcotics in the judgment effectively made the Vidal concern moot. But he didn't do that in this case because we didn't have that one word narcotics in the judgment. But since we've already, I think, beaten the modified categorical approach issue to death, I'd like to turn to the categorical approach. And I think this Court can easily avoid the Categorical worries me a little bit. If controlled substances just means dictionary definition of control rather than some meaning taken from statutes, the substance that occurs to me as the most frequently controlled to the annoyance of, well, probably the largest number of people, all the teenagers who are over 15 or so, is alcohol. Alcohol is very strictly controlled by every state in the union. And the Federal government won't give highway funds unless they do. And the teenagers can't buy it. They have to be 21. And if anyone sells alcohol to somebody under age, they get penalized severely, lose their liquor license, go to jail. It's a controlled substance in the dictionary definition of the word. So I don't see why your argument doesn't mean that if somebody was a bartender and was convicted of selling to some kid with a fake I.D., that that wouldn't qualify. The common ordinary meaning that the government is advocating here is not decoupled, Judge Kleinfeld, from the application note in the guideline, which I think narrows this down and takes things such as gasoline additives, alcohol, sugar, if they wanted to regulate sugar. This is a drug trafficking guideline. It talks about narcotics, drugs, and trafficking. And so when you're trying to interpret what the term controlled substance means. So when you say take the ordinary meaning and not the legal meaning, you don't mean take the ordinary meaning and not the legal meaning. You mean take the legal meaning but from this guideline comment rather than that statute. Well, yes. I mean, because ultimately this under the guidelines, the Sentencing Commission is free to define any term so long as it's not patently absurd. That comes from, I think, the Stinson case in the Supreme Court in the 90s. And there's nothing absurd about the Sentencing Commission's definition in the application note 1B4 here expressly says that any violation of any law or regulation addressing the trafficking of controlled substances under State, local, or Federal law qualifies. And I think we think that's. That's for purposes of the sentencing guidelines, but for purposes of controlled substances, the Federal Controlled Substances Act does not include everything that California does and vice versa. That's right. I mean, from a personal perspective, I struggle with the categorical meaning in this case. It's just a little too loose, and you have the burden on this. But from your perspective, it's real clear under the modified categorical analysis in this case. Is that correct? Yes, Your Honor. We think, like, we think that the analysis that we discussed in the prior case would apply fully here. In other words, it's a Snellenberger copycat, basically. It's right on the line. Yes. Although we are here, and the Solicitor General did authorize this appeal, because win or lose, the government would like guidance on the categorical issue. Right. We shall provide it to you. Well, good. And we'll take it either way. Hopefully it is favorable to the government from where I stand. But the reason why I don't think that, Judge Smith, you should be concerned about my categorical approach argument is if we go back to kind of just basics, the defense argument, or what Judge Gutierrez found, engrafts onto the guideline a limitation that is not there, and that is as defined by the Controlled Substances Act. That language is not in this guideline. So in order to go the defense way, you'd have to go the defense way. But by the same token, there's no – it may not specifically include or exclude. It's left ambiguous, and therein lies the rub, isn't it, under Taylor? Well, I don't think it's ambiguous because we have this application note that speaks of any local, State, or Federal law, and seemingly, then, is an express reference to the Commission's desire to delegate to the States in this area. And I need to point out that there's nothing antithetical about that to Taylor. You know, Taylor was concerned with a specific elemental crime, burglary, and it noticed that there were no definitions whatsoever or no consistency among national definitions. So the Supreme Court decided to go to the common law definition. But here we don't have the absence of a definition in the generic text because the Sentencing Commission has provided it itself in Application Note 1b-4. And the courts, again, must enforce that. Why should we do you this favor of putting a holding on the books that lets you use a categorical approach when you say that Snellenberger controls and the modified categorical approach is all you need? Because we're not in the business of just doing the government favors to make things easier. No, I understand that. But there are certainly cases, well, two reasons, I guess. The first is there are cases where, and I know we've debated this already a little bit this morning, where we can't get the State court records or we cannot get a complete set. And in particular, there are cases where we can't even get the judgment and probation order. So there will be defendants who get that. But we really don't know whether the person committed an aggravated felony or not. Then we shouldn't really bump up a sentence 16 points or treat them as removable or ineligible for relief or any of those things. But we would know, if this Court holds, that 11351 categorically is a drug trafficking offense under the gun. By the same token, along the lines of what Judge Kleinfeld suggested, that were we to rule against the government on that, then you would know when you went into a proceeding that you had to have the documents under Schnellenberger and I'm sure that Mr. Gunn is going to tell us under Vidal that would be sufficient to prove up your case on that basis. And you'd know it in advance and you would have the weight and power of the government to get the documents that you need, right? But there would be some where we would not be able to get the documents because that just is a fact of life. There are some people you can't convict of crimes because you can't prove an element. No, that's true. But there would also be some cases where we could not find the pertinent documents and therefore couldn't seek the enhancement. The other one. So what? Well, under our reading, we believe. If you can't prove that they should get the enhancement, why should they get the enhancement? Because they should get it because this is categorically a drug trafficking offense. And I guess the last kind of common sense or nonhypertechnical argument I want to make as to why categorically this should qualify is that the defendant's position really in this case is absurd. So if some girl in high school asks another girl if she has some aspirin and the other girl says, I just bought a bottle on my way to school, it cost me $2.79, give me $2.79, I'll give you the aspirin, she's committed the controlled substance offense. No. No, not at all, Justice Kleinfeld, because aspirin is not regulated on a State's controlled substance schedule. It's regulated in other ways, like gasoline additives. But on the absurdity point, if the Court embraces under the categorical approach defendant's argument, the only State in the Ninth Circuit that will categorically qualify under this guideline is Oregon. And when you have an application note where the Commission has said that, you know, we're going to qualify any local, State, or Federal violation, which again bespeaks delegation, and this Court in Trinidad Aquino said that's fine, it would make no sense to then take it right back by holding that only Oregon out of all the jurisdictions in the Ninth Circuit qualified because other States have decided to add, you know, eight designer steroids, as is the case with California. They don't qualify on a categorical basis, but we would not be taking it away from you on a modified categorical basis. No. We're always free, subject to the guillemot de certitude. And under your approach, then we effectively eliminate the modified approach because everything falls under the categorical approach, and then we get back into the area of Taylor. We get – then we bring Taylor back in. Taylor, as Judge Smith appropriately pointed out, has caused great mischief. I mean, admittedly, I think this whole regime, Judge Marwood, has caused a lot of mischief. But there's nothing wrong with having it be easy if it's the right result. And because the position advocated by the defense and embraced by Judge Gutierrez here is absurd in that it writes out of this – out of the Taylor approach, you know, eight of the nine States in the Ninth Circuit. And I think this Court, you know, should feel comfortable in holding that 1135. On that happy note, we'll thank you for your argument, and we'll hear from Mr. Gott. Just to start with that last point, Your Honor, about the absurd result, the same result happens with burglary in this circuit. As I pointed out in my brief, every burglary statute except the burglary statutes in Hawaii, Alaska, and Montana, which by population are less than Oregon when you add them together, is excluded. And as Judge Smith rightly pointed out, all that means is you have to use the modified categorical approach and go at it on a case-by-case basis. And if you don't do it that way, then what you do is you end up pulling a bunch of people in under overbroad state statutes that really shouldn't be in under the federal provision. We can all stipulate that the Supreme Court didn't do us a favor in Taylor, and we've spent endless hours of prosecutorial, judicial, and defense time trying to figure this out. And we're just part of the process here. I think Your Honor's right. The bottom-line problem with the government's argument on the categorical approach is you basically have what a controlled substance offense is depending on the laws of 50 different states. And Taylor thinks the same. Mr. Gunn, and I don't mean to interrupt you, but I'm inclined to agree with the road that you're getting ready to take, but that's not the road map that's in Leal-Vega because you have four documents here. In this case, we have four documents. That's correct. And so I said earlier it was driving me to abstraction. I meant it was driving me to distraction. So tell me why these four documents are not enough, because pretty soon we're going to have to fashion a bright-line rule that will require the government to bring in to court all the time the transcript of the Pete Poliquin College. That seems to be the only remedy. That's what the government ought to do, and I think the questions Your Honors were asking of the government in the last argument was totally appropriate. Can't you get it easily? And the answer is they can't get it easily. I agree with that. We know from the guilty plea transcript what happened. We don't have the guilty plea transcript presented in the record in this case, and you've got the same sort of problems with the abstract of judgment. I want to talk about that. I also want to talk a little bit about the high standard of proof, which was what I was going to get up and talk about in my other. We had a case where the Ninth Circuit was reversed because we came up with some speculative remote possibility under Shepard, and the Supreme Court said you have to look at what's reasonably likely. And what I'm wondering here is, is it reasonably likely that this fellow was convicted of anything other than possessing for sale tar heroin? First of all, that opinion, Your Honor, they were talking about speculation, I believe, in terms of what the statute might cover. We were trying to make up something in that opinion where it wouldn't fit. I'm sorry, here the statute clearly covers things. There may be a debate about how common those drugs are, and we don't have any statistical studies of that. I'm not asking you that. Right. What I'm asking you is, on the record that we have here, I guess my question is about the same as Judge Marbley's. On the record that we have here, is there any serious possibility that this man was convicted of anything other than possessing for sale tar heroin? Yes. How? There is a possibility on this record that what he admitted at the plea, and therefore what he was convicted of at the plea, was selling or possessing for sale, quote, a controlled substance, unquote, without the substance being specified. Now, why is that a serious possibility? Because that's exactly what the judgment, abstract of judgment, says. For some strange reason. I asked you, taking into consideration the record as a whole, I didn't ask you if you treat the abstract of judgment in isolation. And when I ask you on the record as a whole, it includes the fact that he's charged with tar heroin, he apparently pleads to the charge, and there is no indication that there was any change in what he was charged with or what he pleaded to. There is an indication. Well, first of all, the case law is clear, I think, from everybody's perspective, that a charging document alone is not enough. But we don't have a charging document alone. Right. We also don't have an abstract of judgment alone. Right. So I am unwilling to reach a conclusion in this case on the false assumption that we have either one alone. The possibility, Your Honor, is that he pled guilty and that what was admitted at the plea was simply a controlled substance without agreeing that it was necessarily heroin. How do you account for the minute order? As I see it, we've got the complaint, the abstract of judgment, the minute order, and the felony plea form. And in the case of the minute order, it said defendant pleads guilty to counts one, which is specifically to wit tar heroin. So that's in the judgment, too. The judgment also says count one. The problem is how to count one. And the charges are listed as 11351HSFC. You know, that's at ER 200. Which includes a whole bunch of controlled substances. Well, yeah, I understand that. But count one is this count in the, I have before me here, and it ends up, it says that he did willfully and unlawfully possess for sale and purchase for purposes of sale of controlled substance to wit tar heroin. That does directly relate back. If you have the minute order and you have the count in the indictment, isn't that sufficient? Not even getting into the abstract. No, because the minute order doesn't just say the statute. No, no, no. It does not. It says defendant pleads guilty to count one. He pled guilty to count one. And count one is the one I told you about, which says tar heroin. But the abstract of judgment says the count, too. It doesn't matter. You only need those two. If you have the complaint and the minute order, that's enough. But you have an abstract of judgment that says controlled, which presumably means controlled substance. Are you suggesting seriously that if you have two or even three or four or five documents that all focus back on the indictment and you have one that is general, that that somehow blows the whole thing up? No, the abstract of judgment also focuses on the indictment. But the problem is to say what it means to tie it down to tar heroin, whereas the minute order does. No, the minute order doesn't say anything about tar heroin. It says he pled guilty to count one. And count one says tar heroin. Right. It references back. Mr. Gunn, you're going to have to tell this panel about count one. Count one is your Achilles heel. Because regardless of what else you say, count one remains. And count one specifically says tar heroin. And the minute order refers back to count one. The abstract of judgment refers to count one. And count one is specific. So we don't have the problem where we don't know what we're talking about here. We do because it could have been orally amended. If I can, I did want to point out the burden of proof here on the government. That's one thing I didn't get to in my last argument. There's some very important language in three different cases, actually. Navidad Marcos, which is quoted at page 22 of my reply brief in the Enorve Appeal and pages 38 and 39 of my brief in this case, says that the government, that the modified categorical approach, if you're going to fall back on it, and remember the problem is it raises all sorts of Apprendi and other issues if you start getting too loose here, not in the guidelines but with the same approach used in the Armed Career Criminal Act under context. It talks about a rigorous standard. It talks about courts should not be handed the task of reading between the lines. And it says we don't have to read between the lines because count one says tar heroin. But you've got to figure out why they wrote controlled instead of heroin because that's what he might have admitted at the plea. It's not very hard to guess why they wrote controlled because that's the word used in the California statute. But why wouldn't they write heroin because that's the word used in the information, it seems to me, Your Honor, if it was really heroin. The statute 11351 doesn't say heroin. It says controlled substance, and it refers you to other statutes to find out what's controlled. Maybe, but I think now we're reading between the lines. I think you're asking us to get reversed the same way we did when we did the wild speculation in that other case. Oh, I'm not, Your Honor. I don't want you to get reversed. You wouldn't. That would be wrong. But the standard is. You might go on worse ground. But I think what we're talking about right now, Your Honor, is the precise sort of reading between the lines. You're saying, well, isn't the reason they put controlled because that's what the statute says. I'm asking, but the information says heroin. Why didn't they put that? Maybe what happened is the careful defense attorney told them to just admit controlled substance. Look, if we're talking about careful defense attorneys, VDAL isn't really a very apt description of careful defense attorneys. If the careful defense attorney is assuring that his client pleads to something less than what's charged, the careful defense attorney makes very sure to get something in writing that goes in the file that shows he's pleading to something that's less serious than what's charged. Sometimes defense attorneys are careful and sometimes they're not. And the high standard, the VDAL, Navidad Marcos, also speaks about unequivocally established. Strickland spoke of. I mean, you bargain. We'll plead, but you've got to file an amended information so that it's really clear what we're pleading to. And the problem is that, as Judge Gutierrez put it in the transcript in this case, things in California courts at preliminary hearings where you work out a deal on the spot, quote, get amended on the fly, unquote, and things happen on the fly. The clients there, they don't even carry pens or pencils? They don't use them sometimes, Your Honor. The lawyers don't know how to write? They know how. They just sometimes don't. And that's what Judge Gutierrez was. He was a judge in the court, the same California State courts. It seems to me that the least we can expect of defense attorneys trying to make it clear in the record that the plea was to something less than what was charged is that they be able to read and write and do so. Yeah, but if the defendant's attorney didn't do that because things got amended on the fly in Judge Gutierrez's work and the state court attorney was too busy, the defendant shouldn't suffer by getting his conviction treated as something it might not have been. I've done things on the fly, and that's when you use pencils and pens instead of submitting some typed-out document from your office. Of course, it's always in the transcript, and we would know whether it was in the transcript if the government produces the transcript in the case. There's an easy way around this problem. I guess if it were important, because the transcript really would show that the defendant had pleaded to something less serious than what the whole record suggested, the defendant could also produce the transcript. Correct, except the burden's on the government, as it is in our system. True, but when you have good evidence that shows something contrary to the obvious inference, even if you don't have the burden, you still do it. That's why lawyers doing defense often put on a real case instead of just poking holes. Sure, so I think the evidence here isn't good for a couple reasons. One is it changes the word heroin in the information to control. The other thing that's wrong with this abstract of judgment, it's a very case-specific thing that says what the heck's going on here with this abstract of judgment, is it has the wrong conduct. It has the conduct of selling, which isn't even covered by this statute. So the abstract of judgment in this case actually jumps out at you as something's wrong here. So in this case, you have something you don't have in the other case where there's something smells funny. Something's wrong with this abstract of judgment. And if you have an abstract of judgment where you know something's wrong with it, then how can you call that the unequivocal showing that Navidad Marcos requires? Or in the words of Strickland, how can you say that it's the only fair reading and there's no reasonable conclusion other than? I think we have your argument. Unless either of my colleagues has more questions, we will thank you for your argument. Now, the government, you went over your time. He got a little extra time. So we'll give you a minute and then we'll be done with this fine discussion. Thank you very much, Judge Smith. I want to address Mr. Gunn's point at the beginning on the categorical approach that burglary somehow exemplifies how the result he's advocating here is not absurd. Burglary is a different animal, just like extortion, arson. There are some generic definitions that the Federal courts are asked to interpret that are strict elemental crime definitions. The Federal courts have to unpack the elements from that definition. That's one bookend. The other bookend are some which are very loosey-goosey and probabilistic, like the residual clause in the career offender guideline. We're in the middle. We're dealing with a generic definition that discusses a class of offenses, drug trafficking offense, and then the application note speaks of the. I'm still worried about alcohol. E-T-O-H is a drug. And actually in Alaska, alcohol is more controlled than marijuana. Possession for personal use of a small quantity of marijuana is only a civil offense. But possession, unless you're in a permitted class of a small quantity of alcohol for personal use, is a criminal offense. I think the guideline, when it speaks about drug trafficking and when it talks about various types of conduct that would constitute the trafficking component, obviates your concern, Judge Kleinfeld. And moreover, fortunately, we are not in the ACCA regime. This is a unique definition to 2L where the guidelines are advisory. And so if you have to use your hypothetical or mine, Arizona decides to start regulating sugar and putting it on its controlled substance schedule, a district judge can account for that with its booker discretion. Thank you for your time. Thank you both for your argument, this one and the previous one. You're both able advocates, and we will render a decision in each case, you can rest assured. The case we just heard, United States v. Leal Vega, is submitted, and we will now hear argument in the case of United States v. Tim James Collins.
judges: Marbley, Kleinfeld, Smith